UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PATRICK CROWE,

                               Plaintiff,

v.

LEROY CENTRAL SCHOOL DISTRICT,

                               Defendant.
_____

**REPORT AND RECOMMENDATION**

10-CV-01003(A)(M)

        In this action plaintiff Patrick Crowe, a teacher employed by the Leroy Central School District, alleges that the District violated the Age Discrimination in Employment Act ("ADEA", 29 U.S.C. §621, *et. seq.*) and the New York State Human Rights Law (N.Y. Executive Law §290 *et. seq.*) by changing his teaching assignment from twelfth grade students to ninth grade students. Complaint [1].[1] Before me is the District's motion for summary judgment [29]. Oral argument was held on February 28, 2013 [35]. For the following reasons, I recommend that the District's motion be granted.

**BACKGROUND**

        The District operates one junior/senior high school. District's Statement of Material Facts Not in Dispute [29-1], ¶1. Plaintiff Crowe is certified to teach seventh through twelfth grade English, and has been employed by the District as an English teacher since 1971. Id., ¶¶2, 3. Crowe taught seventh, eighth, tenth and eleventh grade English for the District until

---

[1]     Bracketed references are to the CM/ECF docket entries.

1977, when he began teaching twelfth grade. Id., ¶3. He also serves as chair of the high school's English department, and has served in that role for at least twenty years. Id., ¶6.

In July 2008, Joseph Englebert became the principal of the high school. Id., ¶4. For the 2008-09 school year, the District employed six English teachers in the high school, each teaching a grade level (seventh through twelfth). Id., ¶7. At the commencement of that school year, Crowe taught twelfth grade, as he had since 1977, plus an Advance Placement ("AP") English class. Id., ¶8. Crowe was 60 years old at that time (id., ¶2), and Englebert believed that he was nearing retirement age. Englebert's deposition transcript [32-4], p. 28.

During the winter of the 2008-09 school year, Englebert decided to make personnel changes to the English department, and he began discussions with the District's Superintendent, Cynthia Herzog. District's Statement of Material Facts Not in Dispute [29-1], ¶9; Plaintiff's Response [32-1], ¶9; Englebert's deposition transcript [32-4], p. 40. Meanwhile, in order to avoid layoffs due to potential reductions in state aid, early retirement incentives were offered to 20 eligible teachers, including Crowe, in January 2009. District's Statement of Material Facts Not in Dispute [29-1], ¶¶11-13. Pursuant to the Memorandum of Agreement reached between the District and Teachers' Association, no individual teachers were to be targeted with the incentive, which was optional and voluntary. Id., ¶12. The incentive was communicated to the eligible teachers by e-mail, which attached the Memorandum of Agreement. Id., ¶13. Prior to the February 20, 2009 deadline for accepting the incentive, Barbara Crane, the seventh grade English teacher, notified the District of her intent to accept the incentive. Id., ¶14.

Discussions between Englebert, Herzog, and Assistant Principal Lynda Lowe continued concerning personnel changes to the English department, including the vacancy due to Crane's retirement. Id., ¶16. Eventually, Englebert decided to reassign Crowe to teach ninth grade English, and to reassign Amy Brotherton from ninth grade to twelfth grade English. Id., ¶¶17, 26-27. At Herzog's direction, he notified plaintiff and Brotherton of their reassignments on February 12, 2009, so that plaintiff could still take advantage of the early retirement incentive. District's Statement of Material Facts Not in Dispute [29-1], ¶27. Although Crowe asked Englebert whether he was trying to get him to retire, Englebert did not provide a reason for the reassignment at this meeting. Plaintiff's Affidavit [32-3], ¶¶16-17.

Prior to the reassignment, there had been no complaints about either Crowe's or Brotherton's performance. Englebert deposition transcript [32-4], p. 40. According to the District, the reason for Crowe's reassignment to ninth grade was that he had in-depth knowledge of the English Regents exam offered at the end of students' eleventh grade year, since he had served on a state-wide committee that develops questions for the exam. District's Statement of Material Facts Not in Dispute [29-1], ¶¶21-23. Although the examination is not given until the conclusion of eleventh grade, preparation for this exam begins in the ninth grade. Id., ¶22. At the time of the reassignment, Brotherton was approximately forty-five years old, and had only taught eighth and ninth grades during her tenure. Plaintiff's Affidavit [32-3], ¶¶12, 37. However, it is undisputed that she had demonstrated the skills necessary to teach twelfth grade. District's Statement of Material Facts Not in Dispute [29-1], ¶25.

Crowe alleges that during a February 17, 2009 meeting that he requested with Herzog concerning the reassignment, she stated:

> "[W]e know you are not going to be here for forever, and I would rather make a change now while you are still here and can help your replacement than to wait until you are gone. If it were up to me, I would have put you in seventh grade, but Joe [Principal Englebert] didn't want you to go that low. Usually changes like this are made in June, but I told Joe this was so important that he needed to let people know now." Plaintiff's Affidavit [32-3], ¶22.

Dissatisfied with the reassignment, Crowe also met with Englebert. Based on Crowe's negative reaction, Englebert reconsidered his decision to reassign him. District's Statement of Material Facts Not in Dispute [29-1], ¶¶32-33. However, after meetings with the English department, Englebert concluded in June 2009 that Crowe's reassignment would best serve the students in the ninth grade, and proceeded with the reassignment as originally contemplated, but allowing Crowe to continue to teach AP English to twelfth grade students. Id., ¶34.[2] Crowe alleges that when the students learned of his reassignment, 350 students signed a petition to keep him teaching twelfth grade. Crowe's Affidavit [32-3], ¶28. Janelle Rinker, who was 26 years old and taught Academic Intervention Services ("AIS"), filled the seventh grade vacancy created by Crane's retirement. . District's Statement of Material Facts Not in Dispute [29-1], ¶37-38.

Since the 2009-10 school year, Crowe has taught two-thirds of the ninth grade English classes as well as AP English to twelfth graders. District's Statement of Material Facts Not In Dispute [29-1], ¶40. He also remains chair of the English department. Crowe's deposition transcript [32-4], p. 25. He maintains that teaching ninth grade is "less desirable" than

---

[2] Crowe alleges that on June 5, 2009, Englebert advised him that he would be teaching ninth grade, but that "[p]rior to this meeting, [he] was never informed [that his experience with the Regents exam] was the reason for the transition." Crowe's Affidavit [32-3], ¶¶33-34, 36.

teaching twelfth grade, and considers the reassignment to be a demotion. Crowe's Affidavit [32-3], ¶¶15, 19.

When asked whether he was enjoying teaching ninth grade classes, Crowe testified that "it's interesting. It's a change, but it's interesting. I've had some problems in a way that I haven't faced in a long time because of the young nature of the children." Crowe's deposition transcript [32-4], p. 25. When asked whether he was "enjoying them", he testified "I am." Id. With respect to whether he thought that he was doing well teaching ninth grade, he testified:

> "I'd like to think I'm doing well. I don't think I'm where I should be yet. I'm still playing with the units that we're doing. I'm still adding and subtracting things as we go along and letting them teach me what works and what doesn't in a variety of different ways. I'd like to think we've been successful." Id., p. 54.

Crowe admits that at no time did Englebert or Herzog discuss his age with him, nor did his age ever enter into the discussions about his reassignment. Plaintiff's Response [32-1], ¶31. While historically teachers had not been reassigned unless a teacher applied for a vacancy (Englebert deposition transcript [32-4], pp. 96-97), it is also undisputed that the District had the authority to make this reassignment, and that it did not impact Crowe's compensation, benefits or retirement benefits. Crowe's Response [32-1], ¶¶18, 43, 44.

In addition to the English department reassignments, Lauren Combo was moved from an AIS assignment to kindergarten; Colleen Rose was moved from an AIS assignment to second grade; and Jade Western moved from second grade to kindergarten. District's Statement

of Material Facts Not In Dispute [29-1], ¶39. At the time, each of these teachers was thirty-one years old or less. Id.

Following the close of discovery, the District moved for summary judgment, arguing, *inter alia*, that plaintiff has failed to establish a *prima facie* case of discrimination because his reassignment did not constitute an adverse employment action, and that even if he could establish a *prima facie* case of discrimination, he has failed to establish that the District's nondiscriminatory reason for his reassignment was a pretext for age discrimination. District's Memorandum of Law [29-5], Points I and II.[3]

**ANALYSIS**

**A.      Summary Judgment Standard**

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record that could

---

[3] The parties previously stipulated to dismiss defendant David DeLoria, the District's Superintendent [25, 26], and in response to the District's summary judgment motion, Crowe has withdrawn his claim under the New York State Human Rights Law. Crowe's Memorandum of Law [32], p. 2 n. 1.

reasonably support the jury's verdict for the non-moving party.'" Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

While the moving party must demonstrate the absence of any genuine factual dispute, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is *a genuine issue for trial*." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original). "An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . . The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (emphasis in original). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

**B.     Crowe's ADEA Claim**

The ADEA makes it "unlawful for an employer . . . to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §623(a)(1). "ADEA . . . claims are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." DiGirolamo v. MetLife Group, Inc., 2012 WL 3660525, *1

(2d Cir. 2012) (Summary Order); Cardo v. Arlington Central School District, 473 Fed.Appx. 21, 23 (2d Cir. 2012) (Summary Order).

"Under the McDonnell Douglas framework, the plaintiff bears the initial burden to establish a prima facie case of age discrimination by showing '(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination.' . . . If the plaintiff succeeds in making out a prima facie case, the burden shifts to the employer to articulate a 'legitimate, nondiscriminatory reason' for the employment action . . . . Upon the employer's proffer of such a reason, the presumption of discrimination 'drops from the picture' and the plaintiff must come forward with evidence that the proffered reason is a mere pretext for discrimination." Attard v. City of New York, 451 Fed.Appx. 21, 23 (2d Cir. 2011) (Summary Order), cert. denied, 132 S.Ct. 1975 (2012). In order to meet the "burden at the final stage, the plaintiff must prove, by a preponderance of the evidence, that age discrimination was the 'but-for' cause of the challenged adverse action." Id.; DiGirolamo, 2012 WL 3660525 at *1; Daniels v. Pioneer Central School District, 2012 WL 70573, *3 (W.D.N.Y.) (Skretny, J.), recon. denied, 2012 WL 1391922 (W.D.N.Y. 2012).

### 1. Prima Facie Case

The District argues that Crowe has not established that he was subjected to an adverse employment action or that his reassignment occurred under circumstances that gave rise to an inference of discrimination. District's Memorandum of Law [29-5], Point I.

### a. Adverse Employment Action

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment . . . . To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Galabya v. New York City Board of Education, 202 F.3d 636, 640 (2d Cir. 2000). Generally, "reassignment of a plaintiff's teaching duties [is not] sufficient to establish an adverse employment action for ADEA purposes." Field v. Tonawanda City School District, 604 F.Supp.2d 544, 557 (W.D.N.Y. 2009) (Arcara, J./ Foschio, M.J.). This case is no different.

Crowe argues that his reassignment was an adverse employment action since it resulted in significantly different responsibilities and a less distinguished title. Crowe's Memorandum of Law [32], pp. 11-12. He claims that when teaching twelfth grade, he had the responsibility of preparing students for college, a responsibility that he did not have teaching ninth grade English (plaintiff's Affidavit [32-3], ¶6), and that "[t]he whole approach to teaching is different" (id., ¶40).

A "reassignment with significantly different responsibilities" may constitute a materially adverse action. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). However, in order to be considered an adverse employment action, the transfer must "result[ ] in a change in responsibilities so significant as to constitute a setback to the plaintiff's career". Galabya, 202 F.3d at 641. While there may be differences in curriculum and teaching methods between ninth and twelfth grade English, nothing in the record suggests that the change in responsibilities was so significant as to constitute a setback to

plaintiff's career. *See* Galabya, 202 F.3d at 641 ("appellant's argument rests on the premise that the special education, junior high school keyboarding class presented job responsibilities that were so different from the mainstream high school keyboarding class that the change in responsibilities was a setback to his career. We cannot adopt this conclusion as self-evident, and no evidence in the record supports it"); Field, 604 F.Supp.2d at 557-58 ("Plaintiffs fail to provide any evidence, in opposition to Defendant's motion, to explain why teaching fifth grade . . . , at the Fletcher School could be reasonably considered to be a more difficult professional task for Plaintiffs to perform than teaching first and second grades . . . at the Fletcher School"); Chandler v. AMR American Eagle Airline, 251 F.Supp.2d 1173, 1184 (E.D.N.Y. 2003) ("Since plaintiff has not alleged that he was ever assigned tasks that exceeded his general job duties or that any assignment affected his pay, hours, or position within the organization, none of these allegations is sufficient to establish an adverse employment action for the purposes of plaintiff's age discrimination claim").[4]  In this case, Crowe continued to teach English to high school students and remained the chair of the English department (Crowe's deposition transcript [32-4], p. 25), continued to teach AP English (District's Statement of Material Facts Not In Dispute [29-1], ¶¶34, 40), and his compensation and benefits were unaffected by the reassignment. Crowe's Response [32-1], ¶¶18, 43, 44.

---

[4] *Compare with* Rodriguez v. Board of Education of Eastchester Union Free School District, 620 F.2d 362, 366 (2d Cir. 1980) ("Appellant's substantially uncontradicted evidence indicated that the art programs at the elementary level were so profoundly different from those in the junior high school as to render utterly useless her twenty years of experience and study in developing art programs for middle school children").

Crowe also argues that "teaching at the 9th grade level is less desirable than teaching at the 12th grade level" (Crowe's Affidavit [32-3], ¶19), and characterizes his reassignment as "demotion". Id., ¶15. Not only does he contradict his earlier deposition testimony that "[i]t legally certainly isn't a demotion" ([32-4], p. 104), but his subjective view of the reassignment is insufficient under these circumstances to render it an adverse employment action. "[I]f a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not itself render the denial or receipt of the transfer an adverse employment action". Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 128 (2d Cir. 2004).

Moreover, Crowe's suggestion that the District attempted to force him into retirement by advising him of the reassignment contemporaneously with offering him an early retirement incentive fails to establish an adverse employment action, since he did not retire. *See* Field, 604 F.Supp.2d at 557 ("Although, under the ADEA a forced early retirement may constitute a form of adverse employment action . . . , it is undisputed that Plaintiffs declined Defendant's Early Retirement Incentive").

Therefore, I conclude that Crowe has failed to establish an adverse employment action - a required element of his *prima facie* case of discrimination. However, in case this conclusion is not adopted, I will also analyze the District's remaining arguments.

b. **Inference of Discrimination**

Crowe argues that he "has established the more favorable treatment of employees not in the protected group; that is, Mrs. Brotherton, the substantially younger 9th grade teacher,

was now assigned to teach Plaintiff's 12th grade English class." Plaintiff's Memorandum of Law [32], p. 14. He notes that Brotherton was approximately forty-five years old at the time. Crowe's Affidavit [32-3], ¶12.

The District points out that Brotherton was also a member of the class protected by the ADEA. 29 U.S.C. § 631(a) ("individuals who are at least 40 years of age"). District's Reply Memorandum of Law [33], p. 4. However, the fact that Crowe was replaced by someone within the protected class does not, standing alone, eliminate the possibility of discrimination. "The fact that one person in the protected class has lost out to another person in the protected class is . . . irrelevant, so long as he has lost out because of his age. Or to put the point more concretely, there can be no greater inference of age discrimination (as opposed to '40 or over' discrimination) when a 40-year-old is replaced by a 39-year-old than when a 56-year-old is replaced by a 40-year-old." O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996).

The District also argues that "alleged inference of discrimination is further extinguished considering the uncontested evidence that the District reassigned other teachers in 2009, several of whom were substantially younger than even Mr. Brotherton." District's Reply Memorandum of Law [33], p. 4. I disagree. Merely because several younger teachers experienced reassignments in a different school within the District, absent any evidence as to the circumstances of these reassignments (including whether they were requested by the employee or resulted in more/less desirable positions), does not dispel the inference of discrimination raised by the fact that Crowe's position was assumed by an individual who was 15 years younger.

"Since the court, in deciding a motion for summary judgment, is not to resolve issues of fact, its determination of whether the circumstances 'giv[e] rise to an inference' of discrimination must be a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive. It is not the province of the summary judgment court itself to decide what inferences should be drawn." Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 38 (2d Cir. 1994). Under this standard, giving Crowe the benefit of every favorable inference as the non-movant, and recognizing the *de minimis* burden which he faces, I conclude that he has satisfied this element of his prima facie case.[5]

### 2. Legitimate, Non-Discriminatory Reason

"[T]he employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle." Banigo v. Board of Education of Roosevelt Union Free School District, 2009 WL 577974, * 5 (E.D.N.Y. 2009). Recognizing that "[i]t is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory" (id.), I conclude that the District's proffered reason for Crowe's reassignment, namely that restructuring of the English department was intended to benefit the students, satisfies the District's burden.

---

[5] As a result of this conclusion, I have not analyzed Crowe's alternative argument that the sequence of events leading to his reassignment resulted in the inference of discrimination. Crowe's Memorandum of Law [32], pp. 13-18.

### 3. Pretext

"[A] plaintiff asserting an age discrimination claim under the ADEA 'must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision.'" Shandrew v. Quest Diagnostics Inc., 819 F.Supp.2d 181, 192 (W.D.N.Y. 2011) (Skretny, J.) "[T]o rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are 'conclusory and unsupported by evidence of any weight.'" Banigo, 2009 WL 577974 at *5; Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.), cert. denied, 474 U.S. 829 (1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all [discrimination] cases").

It is "not enough that a plaintiff produces some evidence of discrimination, rather, in order to survive a motion for summary judgment, a plaintiff must not only present sufficient evidence to support a rational determination by a trier of fact that the purported non-discriminatory reason articulated by the defendant was false, but also evidence upon which a trier of fact may reasonably believe plaintiff's assertion that age was the but-for cause of [the adverse employment action]." Randall v. Kaleida Health, 2012 WL 400780, *5 (W.D.N.Y. 2012) (Skretny, J.).

Crowe relies heavily on Herzog's alleged statement to him that:

> "[w]e know you are not going to be here for forever, and I would rather make a change now while you are still here and can help your replacement than to wait until you are gone. If it were up to me, I would have put you in seventh grade, but Joe (Principal Englebert) didn't want you to go that low. Usually changes like this are made in June, but I told Joe this was so important that he

needed to let people know now." Crowe's Affidavit [32-3], ¶22.

At most, Herzog's statement suggests that the reassignment was attributable, in part, to succession planning. However, "[t]here is nothing in age discrimination jurisprudence that would prevent a company from succession planning". Kelly v. Stafford Tractor Co., 2009 WL 425356, *11 (N.D.Ga. 2009); Boston v. Blue Cross and Blue Shield of Kansas, Inc., 431 Fed.Appx. 763, 767, 2011 WL 3235731, *4 (10th Cir. 2011) (unpublished) ("We . . . reject the notion that any mention of succession planning is tantamount to pretext; compliance with the ADEA and succession planning need not be mutually exclusive").

To the extent Herzog's statement could be construed as an inquiry into Crowe's retirement plans, "a company has a legitimate interest in learning its employees' plans for the future, and it would be absurd to deter such inquiries by treating them as evidence of unlawful conduct." Colosi v. Electri-Flex Co., 965 F.2d 500, 502 (7th Cir. 1992). Moreover, I agree with the District that insofar as Herzog's statement suggests that they wanted him available to assist his successor, it "actually evidences that Defendant wished to *retain* Plaintiff and not see him retire". District's Reply Memorandum of Law [33], p. 7 (emphasis in original).

Crowe also relies on the temporal proximity between the retirement incentive which he was offered and being advised by Englebert of the reassignment. However, it is unrebutted that Englebert "informed him to make him aware of the change and be fair, in the even that it *could* influence his decision." Englebert's Affidavit [29-4], ¶25 (emphasis in original). In fact, he testified that Herzog "felt that . . . if he wasn't made aware of it before the deadline, would probably hold it against the district". Englebert's deposition transcript [32-4], pp. 47-48.

Although Crowe believes that his reassignment was "capricious" and illogical (Crowe's deposition transcript [32-4], p. 63), "it is well settled that the mere fact that an employee disagrees with an employer's [decision], or even has evidence that the decision was objectively incorrect, does not necessarily demonstrate, by itself, that the employer's proffered reasons are a pretext". Kalra v. HSBC Bank USA, N.A., 567 F.Supp.2d 385, 397 (E.D.N.Y. 2008), aff'd, 360 Fed.Appx. 214 (2d Cir. 2010) (Summary Order).

Ultimately, Crowe has offered no evidence beyond his own speculative assumptions as to the reason for his reassignment, which is insufficient to defeat summary judgment. *See* Shandrew, 819 F.Supp.2d at 192 ("Plaintiff has offered no evidence beyond her conclusory allegations that she was terminated because of her age, which is insufficient to withstand summary judgment").

**CONCLUSION**

For these reasons, I recommend that the District's motion for summary judgment [29] be granted. Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by March 25, 2013 (applying the time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the

magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: March 6, 2013

/s/ Jeremiah J. McCarthy  
JEREMIAH J. MCCARTHY  
United States Magistrate Judge